**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff/Respondent,** | |
| **v.** | **No. 13-20125-JAR-13** |
| **STEPHEN EUGENE ROWLETTE,** | |
| **Defendant/Petitioner.** | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Stephen Rowlette's *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and Memorandum in Support as amended (Docs. 518, 532). The Government has responded,[1] and Rowlette has replied.[2] Also before the Court is Rowlette's Motion for Return of Seized Property Pursuant to Fed. R. Crim. P. 41(g) (Doc. 506) and Motion to Provide Sentencing Transcript at No Cost (Doc. 528). For the reasons explained in detail below, the Court denies Petitioner's § 2255 motion without an evidentiary hearing, denies as moot his request for transcript, and dismisses his motion for return of property.

I.     **Factual and Procedural Background**

On September 2, 2014, Rowlette pleaded guilty to Count 1 of a twenty-four count Indictment, charging him and others with conspiracy to distribute and possess with the intent to distribute more than 50 grams of methamphetamine.[3] Pursuant to paragraph 2 of the written Plea

---

[1] Doc. 542.

[2] Doc. 549.

[3] Docs. 153, 154.

Agreement, the parties agreed to the facts constituting the offense to which Petitioner is pleading guilty as set forth in a seven-page attachment to the Agreement.[4]

Pursuant to paragraph 5 of the Agreement, the government agreed: to recommend a sentence at the low end of the applicable Guidelines range; that Petitioner was entitled to a three-level reduction for acceptance of responsibility; the parties would not request an upward or downward departure under the Guidelines; to move for a two-level downward departure from the base offense level under U.S.S.G. § 5K3 provided Petitioner fully cooperated with the government; and acknowledged that the government would file a Notice of Prior Conviction Felony Drug Trafficking Conviction pursuant to 21 U.S.C. § 851.[5]  Paragraph 5 further states that the government's obligations are contingent upon Petitioner's continuing manifestation of acceptance of responsibility; if Petitioner engages in additional criminal conduct, the government reserved the right to request a hearing to determine if Petitioner has breached the agreement; in the event the Court finds that Petitioner has breached the Agreement, however, the government shall not be bound by paragraph 5.[6]

In exchange, Petitioner agreed to provide full and truthful cooperation and the parties agreed that upon determination by the government, it may exercise its discretion to request the Court reduce Petitioner's sentence under § 5K1.1 for his substantial assistance.  Petitioner waived any right to appeal or collaterally attack his conviction or sentence, except for any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.[7]

---

[4] Doc. 154 ¶ 2, Attach. A.

[5] *Id.* ¶ 5.

[6] *Id.*

[7] *Id.* ¶ 13.

The Indictment also included a forfeiture allegation, specifically a money judgment in the amount of $7,090,500, representing the amount of proceeds obtained as a result of the offenses alleged in Counts 1-21 and 23-24 of the Indictment.[8]  Pursuant to the Plea Agreement, Petitioner also agreed to cooperate with the government to identify and recover any forfeitable assets.[9] Specifically, Petitioner agreed not to contest the money judgment in the amount of $7,090,500.[10] On September 24, 2014, the Court entered a Final Order of Forfeiture and Imposition of Forfeiture Judgment against Petitioner in the amount of $7,090,500, which represents the amount of proceeds obtained as a result of the offenses set out in Count 1 of the Indictment.[11]  The judgment was imposed jointly and severally with the co-defendants who are also convicted of Count 1 and have a forfeiture judgment imposed against them.[12]  The Order of Forfeiture became final at the time of sentencing and was made a part of the sentence and included in the judgment.[13]

The Presentence Investigation Report ("PSR") calculated Petitioner's applicable Guideline range as follows: Base Offense Level of 36, based on an offense involving at least 1.5 kilograms, but less than 4.5 kilograms of "Ice"; a two-level increase for an offense that involved the importation of methamphetamine from Mexico, for an Adjusted Offense Level of 38;[14] and a three-level decrease for acceptance of responsibility, for a Total Offense Level of 35.[15]  With a

---

[8] Doc. 1 at 12–13.

[9] Doc. 154  ¶¶ 6(d), 10.

[10] *Id.* ¶ 6(d).

[11] Doc. 164.

[12] *Id.*

[13] *Id.*

[14] Doc. 416 ¶¶ 52, 53, 57.

[15] *Id.* ¶¶ 59–61.

criminal history category of IV, the Guideline range was 235 to 293 months.[16]  However, because the statutory minimum term of imprisonment is twenty years, the Guideline range becomes 240 to 293 months under U.S.S.G. § 5G1.1(b).[17]

The PSR also indicated that Petitioner purchased his home, located at 6544 Sni-A-Bar Road in Kansas City, Missouri, but later transferred the property by warranty deed to his wife's mother.[18]  Petitioner reported that he sold his home to his mother-in-law in order to pay his attorneys fees incurred as a result of his criminal proceedings.[19]  Online records indicate that Petitioner purchased the home on August 31, 2012, and sold it to his mother-in-law on January 17, 2014.[20]  The PSR further indicated that Petitioner was the current owner of over twenty motor vehicles, including motorcycles, racing vehicles, and a boat.

In June 2016, the government moved for a hearing to determine whether Petitioner had violated the terms of the Plea Agreement and sentencing.[21]  The government alleged that following Petitioner's guilty plea, it obtained evidence suggesting that he was a leader and organizer of a large-scale drug and contraband trafficking organization inside CoreCivic-Leavenworth ("CCA") while he remained at CCA awaiting sentencing.[22]  Based on a review of Petitioner's recorded "jail calls," along with calls initiated through other inmates' personal identification numbers, law enforcement officers determined that Petitioner was coordinating with his mother, step-father, and girlfriend to facilitate payment for drugs and contraband sold by

---

[16] *Id.* ¶ 127.

[17] *Id.* ¶ 128.  *See also* 21 U.S.C. §§ 846, 841(b)(1)(A), 851.

[18] Doc. 416 ¶ 118.

[19] *Id.*

[20] *Id.*

[21] Docs. 472, 481.

[22] Doc. 472.

Petitioner and others inside CCA.[23]  This activity led to a separate criminal proceeding, *United States v. Carter* (the "*Black*" case, investigation, or Order) that precipitates multiple § 2255 motions pending before this Court, including Petitioner's.[24]  Given the posture of Petitioner's motion pending sentencing, the charges against him in *Black* were dismissed.[25]

      As part of Petitioner's cooperation, he agreed to proffer regarding his involvement with the *Black* case, but agents determined he was untruthful during the proffer.[26]  In its sentencing memorandum, the government requested a finding by the Court that Petitioner had breached the terms of the Plea Agreement and argued that: (1) Petitioner should not receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; (2) Petitioner should not receive any departure for substantial assistance; and (3) a high end of the Guideline sentence— 405 months' imprisonment— is appropriate.[27]  In his sentencing memorandum, Petitioner argued for a sentence of 240 months, noting the lengthy period of time between the commission of the CCA-related offense and the time of his acceptance by entering into the Plea Agreement in September 2014.[28]  Defense counsel noted that it was within the Court's discretion to allow a reduction for acceptance of responsibility and that Petitioner did in fact proffer information in this case.[29]

---

[23] *Id.* at 2.

[24] No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13. 2019).  As discussed in that Order, the Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

[25] *Id.* at 3–4.

[26] Doc. 479 at 3.

[27] *Id.* at 1–2.

[28] Doc. 539 at 59–60.

[29] *Id.* at 61–62.

A hearing was held July 5, 2016.  After hearing evidence and argument from counsel, the Court found by a preponderance of the evidence that Petitioner breached the Plea Agreement by engaging in conduct violative of the agreement but affirmatively found that the conduct was not relevant conduct for purposes of sentencing in this case.[30]  In other words, the Court did not "estimate or add in any way drug amounts or contraband amounts associated with the CCA case in this case."[31]  The Court agreed with the government that Petitioner should not receive a reduction for acceptance of responsibility, that the twenty-year mandatory-minimum sentence was not sufficient in this case, and sentenced Petitioner to 360 months' imprisonment, followed by a ten-year term of supervised release.[32]  At the end of the hearing, the Court informed Petitioner of his right to file an appeal to the extent he had not waived his right and the timeline to do so, including requesting the Clerk of Court to file a notice of appeal on his behalf.[33]

Petitioner did not file a notice of appeal, but instead filed a Motion to Take Judicial Notice requesting leave to file a notice of appeal out of time on October 11, 2016, more than three months after he was sentenced.[34]  This Court denied Petitioner's motion as untimely.[35] Petitioner then filed a Motion to Recall Mandate on April 6, 2017.[36]  This Court gave Petitioner the opportunity to either withdraw the motion before it was construed as a motion for relief under 28 U.S.C. § 2255 or file an amended motion recharacterized as a § 2255 motion.[37]  Petitioner

---

[30] Tr. July 5, 2016 Hr'g, Doc. 539 at 63–64.

[31] *Id.* at 64.

[32] *Id.* at 63–79; Doc. 482.

[33] Tr. July 5, 2016 Hr'g, Doc. 539 at 83.

[34] Doc. 494.

[35] Doc. 497.

[36] Doc. 518.

[37] Doc. 520.

filed a response to the order titled Defendant's Response to the Court's Notice of Its Intent to Treat His Motion as a Request for Habeas Relief and was again ordered to either withdraw the Motion to Recall Mandate or file an amended motion characterized as a § 2255 motion.[38] Petitioner responded with an authorization to construe the motion as a § 2255 motion, followed by an amended *pro se* § 2255 motion.[39]   Petitioner advances four claims: (1) defense counsel failed to file a notice of appeal; (2) defense counsel was ineffective because he failed to discuss the consequences of Petitioner's post-arrest conduct, relevant conduct, and forfeiture agreement with him prior to his Plea Agreement; (3) the government breached the plea agreement; and (4) denial of his right to allocution.[40]

On April 28, 2016, a civil forfeiture action *in rem* was filed by the government listing a single defendant, the real property located on Sni-A-Bar Road in Kansas City, Missouri.[41]   The government alleged that the property was subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is property involved in a transaction in violation of 18 U.S.C. § 1957, and because it constitutes proceeds traceable, directly or indirectly, to violations of 21 U.S.C. §§ 841 and 846.[42]   The complaint was later amended to add defendants 2 through 7, which are motor vehicles and motorcycles.[43]   The court appointed counsel to represent Petitioner, who asserted an interest in the real and personal property defendants and moved for return of the property and claimed the property was purchased with gambling proceeds.[44]   On August 6, 2018,

---

[38] Docs. 523, 526.

[39] Docs. 529, 532.

[40] Doc. 532.

[41] *United States v. Def.  No. 1: Real Prop. Known as 6544 Sni-A-Bar Road Kansas City, Mo.,* D. Kan. No. 16-1116-JWB, Doc. 1.

[42] *Id.* at 3.

[43] *Id.* Docs. 6, 19.

[44] *Id.* Docs. 18, 39.

the court granted the government's motion to sell the real property because taxes had gone unpaid on the property for more than three years.[45]  The court also denied Petitioner's motion to dismiss the remaining defendants, and granted the government's motion to sell defendants 2 through 7.[46]  The government subsequently filed a motion to dismiss defendants 1 and 2, the real property and a 2002 Honda, which the court granted.[47]  Trial on forfeiture of the remaining defendants is set to begin June 14, 2021.[48]

Petitioner was represented in the underlying criminal proceedings by Floyd A. White, Jr. In its response to Petitioner's § 2255 motion, the government provided an affidavit from Mr. White in which he addresses in detail Petitioner's allegations that his representation in his criminal proceedings was ineffective.[49]

## II.    Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[50] The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[51]  A § 2255

---

[45] *Id.* Doc. 42.

[46] *Id.*

[47] Doc. 90.

[48] Doc. 109.

[49] Doc. 542, Attach. B.  *See United States v. Pinson,* 584 F.3d 972, 978 (10th Cir. 2009) (holding when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove the claim).

[50] 28 U.S.C. § 2255(b).

[51] *United States v. Galloway,* 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[52]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[53]

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[54]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[55]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[56]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[57]  This standard is "highly demanding."[58]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[59]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[60]  Moreover, the reasonableness of the challenged conduct

---

[52] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[53] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), ("[t]he allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

[54] U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).

[55] 466 U.S. 668 (1984).

[56] *Id.* at 688.

[57] *Id.* at 690.

[58] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[59] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[60] *Strickland*, 466 U.S. at 687.

must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[61]

To meet the second prong, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[62]  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[63]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[64]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[65]

A defendant is entitled to the effective assistance of counsel during plea negotiations.[66] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[67]  "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"[68]

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[69]  "The

---

[61] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[62] *Strickland*, 466 U.S. at 687.

[63] *Id.* at 694.

[64] *Id.*

[65] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[66] *Lafler v. Cooper,* 566 U.S. 156, 162–63 (2012).

[67] *Id.* at 163 (internal quotation marks omitted).

[68] *Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

[69] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[70]

## III.   Discussion

### A.      Failure to File an Appeal

Petitioner claims that defense counsel, Mr. White, disregarded his instructions to file a notice of appeal in a meeting between the two after the sentencing hearing on July 5, 2016. Petitioner claims that White tried to persuade him not to file an appeal and never told Petitioner that he would have to file a *pro se* Notice of Appeal within fourteen days of sentencing.[71]

A particularized claim that counsel failed to file a notice of appeal despite a timely request from the defendant is generally sufficient to warrant relief.[72]  "[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial."[73]  The proper remedy if counsel failed to file an appeal is to vacate Petitioner's sentence and allow him to be resentenced so that he may perfect an appeal.[74]  "But this does not imply that a habeas petitioner is automatically entitled to an evidentiary hearing merely because he makes an allegation that his attorney refused to file an appeal."[75]  The Tenth Circuit has noted that the district court retains the "flexibility" or discretion

---

[70] *Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[71] Doc. 494 at 2.

[72] *United States v. Jasso Chavero*, 630 F. App'x 866, 868 (10th Cir. 2015) (citing *United States v. Snitz*, 342 F.3d 1154, 1155–56 (10th Cir. 2013)).

[73] *Snitz*, 342 F.3d at 1155–56; *see also Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) ("[P]rejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)).

[74] *United States v. Moore*, 83 F.3d 1231, 1233 (10th Cir. 1996).

[75] *United States v. Harrison*, 375 F. App'x 830, 833 (10th Cir. 2010).

"to utilize alternative methods to expand the record without conducting an extensive hearing."[76] The Supreme Court has said that a § 2255 movant is not always entitled to a full hearing simply because the record "does not conclusively and expressly belie his claim."[77]  District courts retain the "discretion to exercise their common sense" and dispose of these issues without a hearing when a movant's factual allegations are "vague, conclusory, or palpably incredible."[78]

The primary issue before the Court is whether an evidentiary hearing is needed on this claim.  In his affidavit, White states under oath that he met with Petitioner after the sentencing hearing and expressed particularized concerns advising against filing an appeal, specifically, the appeal waiver in the Plea Agreement and this Court's discretion to deny Petitioner a three-level reduction for acceptance of responsibility.[79]  White avers that at no time did Petitioner indicate that he wanted to file an appeal and if he had asked him to do so, White would have filed a Notice of Appeal despite his misgivings.[80]  White followed up this meeting with a letter dated July 6, 2016, addressed to Petitioner at the Atchison County Jail, in which he states that he sees "no chance for appeal" and would not suggest it because there was a waiver and this Court acted within its discretion at sentencing.[81]  White further advised Petitioner in the letter, "[h]owever, if you are going to do something you can start that process yourself, but you do need to advise the Court Clerk that you wish to have a Notice of Appeal filed" within fourteen days.[82]  The letter included a postscript with the address for the Kansas City Courthouse.  White avers that it is

---

[76] *United States v. Lee-Speight,* 529 F. App'x 903, 907 n.5 (10th Cir. 2013).

[77] *Machibroda v. United States,* 368 U.S. 495 (1962).

[78] *Id.* at 495–96.

[79] Doc. 542, Attach. B at 2.

[80] *Id.* at 3.

[81] *Id.*

[82] Doc. 494 at 5.

customary for him to send such a letter in all cases so the client might have the time to think about an appeal after talking with White and would have an opportunity to pursue that option.[83] After the July 5 meeting, White heard nothing from Petitioner until September, when this Court notified him that Petitioner was alleging that he failed to file a notice of appeal and directing White to respond to Petitioner.[84]  White did so on September 14, 2016, stressing to Petitioner that although they discussed an appeal at the July 5, 2016 conference, at no time did he ever ask White to file a Notice of Appeal, and that he followed up with the July 6, 2016 letter confirming as much.[85]

Petitioner claims that he did not receive the July 6 letter and on October 5, 2016, he sent a letter and "Affidavit of Facts" to White suggesting that the letter was written in an effort to cover up some failure on White's part to do what Petitioner had asked him to do.[86]  Petitioner claims that he "flat out" told White that he wanted to appeal and questioned why they would have a conversation about the merits of an appeal if he did not ask White to do so.

To warrant an evidentiary hearing, a petitioner must present detailed and specific facts to back up his allegation, instead of "vague, conclusory, or palpably incredible" allegations.[87] Although the Court may hold an evidentiary hearing if the record warrants it, the Court may also exercise its discretion to first evaluate whether the defendant has come forward with a substantial claim warranting further factual development; if the claim is not sufficiently substantial, or if the record is sufficiently complete to resolve the motion on its merits, it may be denied without a

---

[83] Doc. 542, Attach. B at 3.

[84] *Id.*

[85] *Id.*

[86] Doc. 494 at 4.

[87] *United States v. Harrison*, 375 F. App'x 830, 833 (10th Cir. 2010).

hearing.[88]  In his reply, Petitioner provides no details to counter White's affidavit surrounding the specifics of his purported directive to White about filing an appeal in the conversation they had after the sentencing hearing.  Instead, Petitioner states that he believes the record is sufficiently developed to conclusively establish that counsel simply refused to file a notice of appeal.

Based on the record before it, the Court concludes that an evidentiary hearing is not needed.  Petitioner and White met in person after the sentencing hearing on July 5, 2016.  Each has stated his recollection of the discussion at that meeting.  Neither party has suggested there are additional witnesses or evidence that could shed light on the advice that Petitioner was given at the time.  The Court assumes that each party would give testimony consistent with the representations made, and thus finds that an evidentiary hearing would not meaningfully add to the record presently before the Court and it is appropriate to consider Petitioner's claim on its merits based on the record recited above.

The Court finds Petitioner's conclusory allegations are without supporting factual averments, and contradicted by the record.  Petitioner's claims focus on an alleged cover-up by White rather than any details of the conversation or specifics regarding Petitioner's purported request that White file an appeal, despite White's specific reservations about the merits of any appeal.  On the record before it, the Court cannot find that White refused to follow through with his client's directive.  White denies having done so and it would be extremely unlikely that an able and experienced criminal defense counsel would fail to file a notice of appeal on his client's behalf, particularly in light of the detailed letter he prepared and mailed to Petitioner the day

---

[88] *United States v. Jasso Chavero*, 630 F. App'x 866, 868 (10th Cir. 2015); *Harrison*, 375 F. App'x at 833 (citing *Marchibroda v. United States*, 368 U.S. 487, 495 (1962) ("there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the petitioner")).

after the meeting, as per his custom.  It is telling that White never received any direct communication from Petitioner about the status of the appeal that he claimed he wanted before he made his allegations to the Court.  Accordingly, the Court finds that Petitioner has failed to carry his burden to make a particularized claim of ineffective assistance of counsel on this ground his motion is denied on this basis.

### B.     Breach of the Plea Agreement

Petitioner's collateral-attack waiver is not enforceable if the government breached its obligations under the Plea Agreement.[89]  In resolving a claim that the government breached a plea agreement, the court relies on "general principles of contract law" and "looks to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."[90]  Any ambiguities are resolved against the government as drafter of the agreement.[91]  The Tenth Circuit has held that "the government may not unilaterally declare a breach of the plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement."[92]  Petitioner claims that the government breached the Plea Agreement for the following reasons.

---

[89] *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008).

[90] *Id.* at 1212–13.

[91] *Id.* at 1213.

[92] *United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003).

1.      *Sixth Amendment*

Petitioner first argues that the government breached the Plea Agreement when it violated the Sixth Amendment by intentionally intruding into his attorney-client relationship as part of the *Black* case and investigation, which was based on a review of recorded "jail calls" of Petitioner's and other inmates at CCA.[93]  As noted, this activity led to a separate criminal proceeding in the *Black* case, investigation, and Order, which Petitioner incorporates by reference in his motion. Petitioner appears to claim that as part of the *Black* case, the government became privy to his recorded attorney-client conversations with White while he was detained at CCA.  That Sixth Amendment violation, he contends, renders the Plea Agreement unenforceable.

Petitioner's claim is based on events that came to light in the *Black* case and investigation as detailed in the *Black* Order, including audio and video recordings of conversations and meetings between attorneys and their clients who were detained at CCA.  The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA.  On April 12, 2016, the government served a subpoena on CCA seeking "[a]ll video footage or still images currently retained by [CCA] depicting any internal or external surveillance video or still image taken between July 2014 and April 12, 2016 at the CCA facility in Leavenworth, Kansas."[94]  On May 17, 2016, CCA provided six DVR hard drives to the government containing surveillance footage from inside and outside of the facility, including in rooms used for inmate-attorney meetings.[95]  The defense also discovered that the government had routinely obtained CCA recorded attorney-client phone calls,

---

[93] Doc. 532 at 2.

[94] Black, No. 16-20032-JAR, Doc. 758 at 66.

[95] *Id.* at 66–67.

and that it did so without notice to the attorneys, clients, or courts.[96]  Once notified of the recordings, on August 16, 2016, this Court ordered the video and audio recordings in the government's custody to be impounded.[97]

On July 17, 2018, Standing Order 18-3 appointed the Federal Public Defender ("FPD") to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District.

On August 13, 2019, this Court issued its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  The *Black* Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[98] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[99]  Once those elements are established, prejudice is presumed.[100]

In the *Black* Order, the Court determined that the following threshold showings must be made for a defendant raising such claims in a § 2255 motion after review and verification by the FPD.  With respect to audio recordings, a petitioner must show: (1) the telephone recording

---

[96] *Id.* at 29.

[97] *Id.* at 10, 66.

[98] 70 F.3d 1132 (10th Cir. 1995).

[99] *Black*, No. 16-20032-JAR, Doc. 758 at 162 (citing *Shillinger*, 70 F.3d at 1142).

[100] *Id.*

exists; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[101]  With respect to video recordings, a petitioner must show: (1) the video of the attorney-client meeting exists; (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel; and (3) an affidavit from defense counsel confirming that the nature of the meeting related to legal advice or strategy, including but not limited to defense preparation, plea negotiations, or review of discovery.[102]  It was the Court's intent that this threshold showing would assist in eliminating claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not audible or visible, or the purpose of the conversation was not to seek legal advice or strategy.

The video recordings from CCA, impounded by the Court since August 2016, were turned over to the FPD after the *Black* Order was entered on August 13, 2019.  Per the parties' agreement, as part of the *Black* investigation, the government also began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[103]  The FPD, along with defense counsel, proceeded to exhaustively review hundreds of hours of audio and video recordings, ultimately filing over 100 habeas motions alleging Sixth Amendment violations with respect to the government's alleged intentional-intrusion into these detainees' attorney-client

---

[101] *Id.* at 166.

[102] *Id.* at 165–66.

[103] *Black*, No. 16-20032-JAR, Doc. 705.

conversations and meetings.  The FPD did not enter an appearance on behalf of Petitioner or supplement his *pro se* § 2255 motion.

In his affidavit, White states that he never talked to Petitioner by telephone while he was detained at CCA, that it was his policy in his forty-five years of practice never to talk to his clients over the telephone, and that he sent correspondence to Petitioner asking him to put any questions or thoughts into writing.[104]  As previously discussed, after review of the recordings turned over by the government, the FPD did not enter an appearance on behalf of Petitioner or supplement his *pro se* motion, nor is there any evidence that a recording of any conversation with counsel exists or meets the threshold criteria for a protected communication established by the Court in the *Black* Order.  The Court has also reviewed the status reports submitted by the government cataloguing the recordings of attorney-client phone calls from CCA per the list of inmates compiled by the FPD, and Petitioner is not listed as having any such recordings.[105] There is simply no evidence in the record beyond Petitioner's speculation to support his allegations that the government breached the Plea Agreement by intentionally intruding upon his attorney-client communications by becoming privy to recordings of his conversations with counsel.  Accordingly, the Court summarily dismisses this claim as lacking any factual basis that would warrant relief from his conviction or sentence.

---

[104] Doc. 542, Attach. B at 2.

[105] *See Black*, No. 16-20032-JAR, Docs. 764, 787, 799, 806, 846, 848.

2. ***Acceptance of Responsibility, Substantial Assistance, and Early Disposition Program***

Next, Petitioner argues that the government breached the terms of the Plea Agreement by arguing at sentencing that Petitioner should not receive a reduction for acceptance of responsibility.  Petitioner makes a similar argument that the government breached the Plea Agreement by arguing against Petitioner's substantial assistance reduction when it "unilaterally" decided to withhold this recommendation, and that it had a "legal and moral" obligation to notify him before sentencing that the government no longer recognized the fact that he had "risked his life" for the government by cooperating.[106]  Petitioner also claims that the government breached the terms of the Plea Agreement when it did not recommend a downward departure for pleading guilty early in the prosecution.

Petitioner's claims refer to the agreements set forth in subsections (b), (c), and (e) of paragraph 5 of the Plea Agreement, where the government agrees:

> b.  To recommend a sentence at the low end of the applicable guideline range;
>
> c.  To recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility.  In addition, if the defendant's offense level is 16 or greater, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility because the defendant timely notified the government of his intention to enter a plea of guilty. . . .
>
> e.  Pursuant to U.S.S.G. § 5K3.1 and criteria set forth by the United States Attorney's Office, to move for a two-level downward departure from the adjusted base offense level found by the District Court (after adjustment for acceptance of responsibility).[107]

---

[106] Doc. 532 at 6.

[107] Doc. 154 ¶ 5.

Paragraph 5 goes on to state, however,

> The government's obligation concerning its agreements listed in ¶ 5 are contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs of impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), **or engages in additional criminal conduct**, **the United States reserves the right to request a hearing to determine if the defendant has breached this agreement**.  In the event the Court finds the defendant has breached this plea agreement, or has otherwise failed to adhere to its terms, the United States shall not be bound by this paragraph. . . .''[108]

Petitioner's claim that the government unilaterally decided and failed to notify him or the Court of its intention not to recommend the reductions specified in paragraph 5 of the Plea Agreement is not accurate.  On June 15, 2016, the government filed a motion requesting a hearing to determine whether Petitioner violated the terms of the Plea Agreement based on the separate criminal conduct he engaged in while detained at CCA.[109]  In the motion, the government specified that if the Court found that a breach had occurred, the government intended "to request a sentence above the low-end advisory Guidelines range, not request a two-level downward departure, and request that the defendant not receive a reduction for acceptance of responsibility."[110]  The Court granted the government's request that any hearing on the motion be conducted on the date and time already set by the Court for Petitioner's sentencing hearing.[111]

---

[108] *Id.* (emphasis added).

[109] Doc. 472.

[110] *Id.* at 1.

[111] *Id.* at 4.

Both the government and Petitioner filed Sentencing Memoranda prior to the sentencing hearing. The government argued in its motion that because of Petitioner's breach, he should not receive reductions for acceptance of responsibility and substantial assistance, and argued for a sentence at the high end of the Guidelines.[112]

At the hearing to determine whether Petitioner had violated the terms of the Plea Agreement, defense counsel acknowledged that the government had established that Petitioner breached the Agreement:

> MR. WHITE: With regard to the issues; the first issue is the government's motion to find that Mr. Rowlette, in fact, did breach his plea agreement with them. I want the record clear and I will advise the Court, Mr. Rowlette and I have reviewed his rights in that regard, we've reviewed the facts in the case. And as I've suggested in my sentencing memorandum, we don't believe a hearing would be necessary. We believe the government would be able to substantiate its belief that the plea agreement that we entered a long time ago was, in fact, breached and that this Court would be persuaded that it was breached. I—to the extent that I can make that representation, I am doing so.[113]

The Court then found that Petitioner had, in fact, breached the Plea Agreement:

> THE COURT: Obviously, we've had a hearing to determine whether Mr. Rowlette has violated the terms of the plea agreement. And there is no dispute that he has, in fact, through subsequent conduct violated the terms of the plea agreement. So pursuant to that, I can find that there is a breach of the plea agreement, which obviously liberates the government to not file a motion for downward departure and to not take the positions that it—it indicated it would take in the plea agreement before it was breached.[114]

Thus, Petitioner had ample notice and opportunity to respond to the government's request and recommendations. The government did not breach the Plea Agreement as Petitioner claims, but

---

[112] Doc. 479.

[113] Tr. July 5, 2016 Hr'g, Doc. 539 at 4.

[114] *Id.* at 50.

exercised its rights under paragraph 5 triggered by Petitioner's engagement in criminal conduct and failure to cooperate.  This claim is denied.

### C.    Ineffective Assistance of Counsel

#### 1.    *Petitioner's Breach of Plea Agreement*

Petitioner claims that, had defense counsel informed him of the consequences of his post-arrest conduct, relevant conduct, and forfeiture, he "would never have agreed to sign the plea agreement to begin with, much less agree to waive this constitutional right to challenge his conviction and/or sentence."[115]  Petitioner contends that it is "indisputable" that defense counsel was aware of the criminal activities at CCA and that it was reasonable to assume that counsel suspected the government might violate the terms of the Plea Agreement.  He contends that if counsel would have informed him that the government was not going to file the § 5K1.1 motion and contest his acceptance of responsibility adjustment, he would have moved to withdraw from the Plea Agreement.  This claim is without merit.

First, Petitioner's argument is based on the inaccurate premise that his breach of the Plea Agreement rendered the agreement void.  As previously discussed, the court is to apply general contract principles in defining the content and scope of the parties' obligations under a plea agreement.[116]  Thus, "if a defendant lives up to his/her end of the bargain, the Government is bound by its promises," but "if a defendant fails to fulfill his/her promises, the Government is released from its obligations."[117]  The party asserting a breach has the burden of proving it by a preponderance of the evidence.[118]

---

[115] Doc. 532 at 8.

[116] *See, e.g., United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003).

[117] *United States v. Ailsworth*, 927 F. Supp. 1438, 1445 (D. Kan. 1996).

[118] *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir. 1995).

Here, there is no question that Petitioner breached the Plea Agreement by engaging in criminal conduct—he admitted as much at his sentencing hearing and the Court found that the government proved, by a preponderance of the evidence, that Petitioner's conduct constituted a breach.  In its motion, the government did not seek to void the Plea Agreement, but instead sought release from its obligations under the Agreement.  The Plea Agreement addresses the effect and remedy for Petitioner's breach in paragraph 5.  The Plea Agreement expressly releases the government from its obligations in the event Petitioner has breached the agreement, stating "[i]n the event the Court finds the defendant has breached this plea agreement, or has otherwise failed to adhere to its terms, the United States shall not be bound by this paragraph . . . ."[119] Paragraph 6 states that in the event Petitioner has not provided truthful cooperation or commits a crime, the Agreement will remain in effect and cannot be withdrawn.[120]  The government did not seek to rescind the entire agreement, however, and by proceeding with sentencing, specific performance was the only remedy that remained.[121]

Nor has Petitioner alleged sufficient facts to show that White knew or should have known of a "fair and just reason" to withdraw Petitioner's guilty plea.  There is nothing to support Petitioner's claim that counsel was aware of the investigation into his alleged criminal activity while detained at CCA.  Instead, the Plea Agreement was contingent upon Plaintiff's cooperation with the government and not engaging in criminal conduct and spelled out the consequences of

---

[119] Doc. 154 ¶ 5 (emphasis added).

[120] *Id.* ¶ 6(c).

[121] *See id.*  By contrast, when the government has breached the plea agreement, the Supreme Court has held that there are two possible remedies: specific performance of the plea agreement, meaning a sentencing hearing at which the government says what it promised to say, or alternatively, giving the defendant an opportunity to withdraw his plea.  *Santobello v. New York*, 404 U.S. 257, 263 (1971); *see also United States v. Oakes*, 680 F.3d 1243, 1247 (10th Cir. 2012) (explaining that the discretion lies with the court to choose which remedy to apply when the government breaches the plea agreement).

violating these obligations.  After counsel received the PSR and the government's motion to determine breach, he discussed with Petitioner the possibility of denial of any sentence reduction for acceptance of responsibility, and that Petitioner's position was "very tenuous at best, but that we would try which we did."[122]  Plaintiff's claim that counsel did not discuss the relevance of his post-arrest conduct is also contrary to counsel's statements at the hearing to determine whether Petitioner had breached the Plea Agreement, where he told the Court: "the first issue is the government's motion to find that Mr. Rowlette, in fact, did breach his plea agreement with them. I want the record clear and I will advise the Court, Mr. Rowlette and I have reviewed his rights in that regard, we've reviewed the facts in the case."[123]

Petitioner fails to meet his burden to establish defense counsel's performance was deficient under *Strickland*.  Petitioner claims that but for counsel's ineffectiveness, he would have both withdrawn his plea and that he would not have entered the plea in the first instance. With respect to his first argument, "[d]efendants do not have an absolute right to withdraw a guilty plea."[124]  Fed. R. Crim. P. 32(e) provides that "[i]f a motion to withdraw a plea of guilty . . . is made before sentencing is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  "The burden is on the defendant to establish a 'fair and just reason' for the withdrawal of the plea."[125]  In analyzing whether a defendant has shown a fair and just reason for withdrawal, the court ordinarily considers the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether the withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5)

---

[122] Doc. 542, Attach. B at 4.

[123] Tr. July 5, 2016 Hr'g, Doc. 539 at 4.

[124] *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000).

[125] *Id.*

> whether close assistance of counsel was available to the defendant; (6)
> whether the plea was knowing and voluntary; and (7) whether the
> withdrawal would waste judicial resources.[126]

Nearly all of these factors would have weighed against allowing Petitioner to withdraw

his plea.  Petitioner has not asserted his innocence or that his Plea Agreement was not

knowing or voluntary.  In fact, he readily admits that his grounds for moving to withdraw

his guilty plea is that he did not receive the benefit of the bargain—the bargain that he

breached and from which the government was released.

Of particular import is whether Petitioner was provided with close and effective

assistance of counsel.  As this Court noted during the sentencing hearing, if not for

Petitioner's alleged criminal conduct and breach of the Plea Agreement, he would have

received a drastically reduced sentence as a result of White's efforts:

> THE COURT: Well, I sensed a fair amount of frustration in you,
> Mr. White, and understandably so.  Mr. Rowlette was charged in
> this case with involvement in a large-scale conspiracy.  And Mr.
> White negotiated in my view a wonderful plea agreement on behalf
> of Mr. Rowlette.  And he did it very quickly, so that Mr. Rowlette
> was in the strongest of bargaining positions in terms of offering
> cooperation to the government and getting the plea agreement that
> he received.
>
> That's the kind of plea agreement that a lawyer of Mr. White's
> caliber and many years of experience tries to negotiate for their
> client if their client will allow them to do that.  And that's the way
> this case started.  And Mr. Rowlette was particularly situated to be
> in a position to really receive a greatly reduced sentence.[127]

Thus, any claim that Petitioner would or could have withdrawn his plea is without merit and

defense counsel's failure to raise the argument or offer such advice does not fall below an

objective standard of reasonableness.

---

[126] *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005).

[127] Tr. July 5, 2016 Hr'g, Doc. 539 at 62–63.

With respect to his second argument, Petitioner cannot demonstrate prejudice—that is, but for counsel's alleged errors, defendant would not have pleaded guilty and would have instead proceeded to trial.[128]  Petitioner contends that he had nothing to lose by not entering his plea and would have preserved his right to a direct appeal.  But Petitioner fails to demonstrate that rejecting the government's plea offer would have been rational.  Petitioner faced charges that carried a twenty-year mandatory minimum and he faced life imprisonment if convicted.[129]  In light of these circumstances, the Court rejects Petitioner's conclusory allegation that he would have proceeded to trial.[130]  Because Petitioner cannot establish prejudice, he cannot prevail of these grounds that counsel was ineffective.  This claim is denied.

### 2.   *Relevant Conduct*

Petitioner argues that defense counsel was ineffective because he failed to inform him that he was aware that the government was going to seek an enhanced sentence based upon the alleged relevant conduct in this case.  He further argues that most of the relevant conduct in this case was the result of the cooperation that he provided to the government.  Specifically, Petitioner alleges that "[w]ithout the drug quantity from the controlled buys, the sentencing guideline range would have been much lower."[131]  Petitioner claims that if he had been properly informed about the effect this relevant conduct would have on his sentence, he would not have entered the guilty plea.

Petitioner's argument is misplaced.  The relevant conduct in this case was not the result of cooperation that he provided to the government.  The Amended PSR found Petitioner was

---

[128] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[129] Doc. 1 at 14.

[130] *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (court looks to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial).

[131] Doc. 532 at 9.

responsible for between 1.5 and 4.5 kilograms of "Ice" methamphetamine:

> 46. Rowlette is held accountable for one kilogram of methamphetamine purchased from the Lopez DTO on April 8, 2013. He is also held accountable for the purchase of one pound (0.5 kilograms) of methamphetamine from the Lopez DTO on April 12, 2013. In total, Rowlett is responsible for the purchase of 1.5 kilograms of "Ice" methamphetamine.

> 47. The methamphetamine that Rowlette is responsible for was not seized and laboratory tested. However, on average, the methamphetamine seized and laboratory tested, throughout the entirety of the investigation of the Lopez DTO, had a purity level of at 80% or above, qualifying it as "ice" methamphetamine. Therefore, all of the methamphetamine transactions conducted throughout the conspiracy is considered "ice" methamphetamine.[132]

This relevant conduct stemmed from intercepted wire communications when Petitioner was not acting as an informant on behalf of the government.[133] Thus, Petitioner cannot meet the performance prong under *Strickland* and this claim is denied.

### 3.     *Forfeiture*

Petitioner claims that defense counsel advised him that he and his wife would not lose their home if he signed the forfeiture agreement. Petitioner contends that, had counsel correctly informed him that he could lose his house, he would not have entered into the Plea Agreement in the first place. In his affidavit, White states that "the plea agreement language itself, which was reviewed with Mr. Rowlette before he signed discusses forfeiture and that he would raise this issue now is surprising." There was no mention of Petitioner's house in the Plea Agreement, likely due to the fact that by the time he pleaded guilty, Petitioner had already transferred ownership of the property to his mother-in-law. After the guilty plea, however, it was discovered

---

[132] Doc. 416 at 12, 14.

[133] Tr. July 5, 2016 Hr'g, Doc. 539 at 8–16.

that Petitioner had transferred the real property without his mother-in-law's knowledge or permission, resulting in the civil forfeiture action filed two years later in 2016.  Because it is not clear how White could have known about or anticipated forfeiture of the real estate, Petitioner has not demonstrated that his performance was deficient.  Moreover, as previously discussed, the government subsequently dismissed the real estate from the civil foreclosure action.  Thus, Petitioner's claim on these grounds is denied.

The Court notes that Petitioner also argues that it is highly questionable that the forfeiture order is still valid in light of the "intervening change in precedent" in the Supreme Court's decision in *Honeycutt v. United States*.[134]  In *Honeycutt*, the Court rejected the idea that a defendant can be jointly and severally liable under 21 U.S.C. § 853(a) "for property that his co-conspirator derived from the crime but that the defendant himself did not acquire."[135]  Honeycutt, a salaried employee at his brother's store, sold large amounts of a product that the police had told him could be used to make methamphetamine; he was later convicted of several drug-related crimes.[136]  The Court held that defendant could not be jointly and severally liable with his brother for the profits from the illegal sales because § 853 requires forfeiture of "'any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of' certain drug crimes."[137]  The Court held that, under § 853(a)(1), a forfeiture statute specific to drug crimes, a co-conspirator defendant's forfeiture liability is "limited to property the defendant himself actually acquired as the result of the crime," thus foreclosing joint and several

---

[134] 137 S. Ct. 1626 (2017).

[135] *Id.* at 1630.

[136] *Id.*

[137] *Id.* (quoting 21 U.S.C. § 853).

liability for co-conspirators.[138]  In other words, when a defendant did not "obtain" tainted

property as a result of the crime, § 853(a) does not authorize forfeiture from that defendant.[139]

Petitioner appears to argue that under *Honeycutt*, the Court erred in holding him jointly

and severally liable for the forfeiture judgment.  As an initial matter, Petitioner's challenge falls

withing the scope of the collateral-attack waiver in the Plea Agreement.[140]  As part of the

Agreement, Petitioner "voluntarily waive[d] any right to  . . . collaterally attack any matter in

connection with this prosecution, conviction, and sentence, including "any right to challenge a

sentence or otherwise attempt to modify or change his sentence in a manner in which it was

determined in any collateral attack."[141]  Petitioner's argument that the money judgment in the

Order of Forfeiture, which was made part of his sentence and included in the judgment, falls

within the term of the waiver.

Even assuming Petitioner did not waive this challenge, *Honeycutt* did not purport to

address joint and several forfeiture generally but instead addressed the narrow issue of whether a

defendant could be ordered to forfeit property that his co-conspirator alone acquired.[142]  Unlike

the defendant in *Honeycutt*, however, there is no evidence that Petitioner did not benefit

personally from the conspiracy and that the profits went to a co-conspirator.  Instead, Petitioner

entered into a Plea Agreement in which he agreed to the imposition of the forfeiture judgment

against him in the amount of  $7,090,500, "which represents the amount of proceeds *obtained as*

*a result of* the offenses set out in Count 1 of the Indictment for which the defendant has pled

---

138 *Id.* at 1633–35.

139 *Id.* at 1635.

140 *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

141 Doc. 154 ¶ 13.

142 137 S. Ct. at 1635.

guilty."[143]  Count 1 charged Petitioner of conspiracy to distribute and possession with intent to distribute more than 50 grams of methamphetamine.  Thus, the money judgment was based on tainted property obtained as a result of the conspiracy offense pursuant to § 853(a) and does not run afoul of *Honeycutt*.[144]  Moreover, Petitioner does not cite, nor is the Court aware of, a case where *Honeycutt* has been made retroactively applicable to cases on collateral review.  This claim is denied.

### D.    Denial of Allocution Right

Finally, Petitioner claims that he was denied the right to allocute before his sentenced was imposed.  Before imposing a sentence, the district court must "address the defendant personally in order to permit [him] to speak or present any information to mitigate the sentence."[145]  "A court violates this right to allocute when it definitively announces the defendant's sentence before giving him an opportunity to speak, and fails to communicate to the defendant that it will genuinely reconsider the sentence in light of his remarks."[146]

At the sentencing hearing, this Court first heard argument by the government and defense counsel on the government's motion to find Petitioner had breached the Plea Agreement and the resulting withdrawal of recommendations for reduction for acceptance of responsibility and substantial assistance.  As noted, the government requested the Court impose a sentence of 405 months; defense counsel requested 240 months—the mandatory-minimum sentence.  Following

---

[143] Doc. 164 (emphasis added).

[144] *See United States v. Pickel*, 853 F.3d 1240, 1260–61 (10th Cir. 2017) (focusing on whether the defendant had obtained tainted proceeds as the trigger for a money judgment, not whether the defendant retained possession of those proceeds) (citing *Honeycutt*, 137 S. Ct. at 1635); *United States v. Purify*, 743 F. App'x 187, 191 n.5 (10th Cir. 2018) (recognizing post-*Honeycutt* that § 853(a) "contemplates the [forfeiture of] gross proceeds and not merely profits.").

[145] Fed. R. Crim. P. 32(i)(4)(A)(ii).

[146] *United States v. Theis*, 853 F.3d 1178, 1183 (10th Cir. 2017) (citing *United States v. Landeros-Lopez*, 615 F.3d 1260, 1268 (10th Cir. 2010)).

argument, the Court found that Petitioner breached the Plea Agreement by engaging in conduct violative of the Agreement, but that criminal conduct was not relevant conduct for purposes of sentencing in this case.[147]  After considering the non-exhaustive list of things the Guidelines provide for the court to consider in making the determination, the Court then found that Petitioner was not entitled to the acceptance of responsibility reduction.[148]  The Court stated that it did not think a mandatory-minimum sentence was appropriate in this case.[149]  The Court then stated:

> THE COURT:  So I'm going to—with these proposed findings of fact and the following proposed findings of fact and announcement of the following *tentative sentence*—I'm going to do that.  And then I've heard some allocution from you, Mr. White, but if you have anything more, I'll ask for that, as well as any statement from Mr. Rowlette, as well as anything that the government might have to offer.[150]

Following the explanation for reasons behind the tentative sentence of 360 months' imprisonment, the Court asked counsel if there were any objections and allowed Petitioner to make a statement before announcing the final sentence.  After defense counsel expressed his disappointment, but raised no objections, the Court asked Petitioner, "Mr. Rowlette, before I announce final sentence, is there anything that you'd like to say to me directly in your own behalf."[151]  Petitioner responded,

> THE DEFENDANT:  Yes, I'd like to—excuse me.  I understand that I'm at the mercy of the Court here.  I just want to let you know I accept responsibility for everything that I've done, and I apologize to the Court and to my family for, you know, all the mistakes that I've made while trying to get to a facility where I

---

[147] Tr. July 5, 2016 Hr'g, Doc. 539 at 63–64.

[148] *Id.* at 65.

[149] *Id.* at 74.

[150] *Id.* (emphasis added).

[151] *Id.* at 80–81.

> can, you know, have some options for my drug problem, to move
> on with my life.  Thank you.[152]

After Petitioner's statement, the Court announced the final sentence of 360 months' imprisonment, followed by a ten-year term of supervised release.[153]

Petitioner's argument that the circumstances of his allocution were "virtually identical" to those in *United States v. Landeros-Lopez* is unavailing.[154]  In that case, the defendant made a statement after the trial court tentatively announced sentence, but then, "[w]ithout formally imposing sentence, the court concluded the proceeding," and days later the judgment of conviction was filed.[155]  Nor does Petitioner's reliance on *United States v. Bustamante-Conchas*, support his argument, where the Tenth Circuit made clear that case involved the "complete denial of allocution."[156]  In *Bustamante*, neither before nor after announcing a tentative sentence did the judge "'address the defendant personally in order to permit [him] to speak or present any information to mitigate the sentence.'"[157]

By contrast, the circumstances of Petitioner's sentencing are nearly identical to that discussed by the Tenth Circuit in *United States v. Theis*, in which the Tenth Circuit found that "the district court did not definitively announce Theis' sentence before giving him the opportunity to speak.  Instead, it repeatedly characterized its proposed sentence as 'tentative' and referred to the conditions it 'intended' to impose."[158]  The Tenth Circuit distinguished these statements from the "conclusive pronouncements" in *Landeros-Lopez*, where the court

---

[152] *Id.*

[153] *Id.* at 82.

[154] 615 F.3d 1260 (10th Cir. 2010).

[155] *Id.* at 1265–66.

[156] 850 F.3d 1130, 1133–34, 1138, 1140, 1142, 1144 (10th Cir. 2017).

[157] *Id.* at 1137 (quoting Fed. R. Crim. P. 32(i)(4)(A)(ii)).

[158] 853 F.3d 1178, 1183 (10th Cir. 2017).

definitively imposed sentence prior to giving the defendant the chance to address the court.[159]

Instead, "[b]ecause Theis had a meaningful opportunity to address the district court and present

mitigating circumstances, he has not shown that the court's failure to invite him to speak sooner

amounted to plain error.  The record shows the defendant was allowed to make a statement

before the Judge finalized the sentence."[160]  Here, as in *Theis*, Petitioner was provided the

opportunity to, and did in fact, allocute before the final sentence was imposed.  Thus, Petitioner

is not entitled to relief and this claim is denied.

## IV.    Motion for Return of Seized Property

Petitioner continues to assert that six vehicles were seized by various federal law

enforcement agencies without "probable cause to believe the property was connected with any

illicit activity or the property had not been legally acquired."[161]  This Court previously denied

Petitioner's first request that "illegally seized" property be returned because the three vehicles

and three motorcycles were turned over to law enforcement in the Western District of Missouri

by relatives of Defendant who were serving as custodians of the property and listed on the title of

some of the vehicles.  The Court denied the relief sought for the property because Defendant's

motion was filed in the wrong district; to the extent any of this property was "seized," it was not

done in Kansas, but rather, the Western District of Missouri.[162]

The Court dismisses the instant motion for similar reasons.  As previously discussed, the

government filed a civil forfeiture action in the District of Kansas, naming as a defendant the real

---

[159] *Id.* (citing *Landeros-Lopez*, 615 F.3d at 1265).

[160] *Theis*, 853 F.3d at 1183; *see also United States v. Valdez-Aguirre*, 861 F.3d 1164, 1170 (10th Cir. 2017) (finding no error when the defendant was invited to make a statement after a tentative sentence was announced but before the final sentence, because "trial court interspersed these comments with statements suggesting tentativeness, such as statements of its intent.").

[161] Doc. 506 at 1.

[162] Doc. 501.

property in Kansas City, Missouri, and later amended the complaint to add the property listed in Petitioner's motion.[163]  That civil forfeiture action remains pending before Judge John W. Broomes, and Petitioner should seek any relief in the court where those proceedings were filed. There are no criminal forfeiture proceedings pending before this Court.  Accordingly, Petitioner's second motion for return of property is dismissed for lack of jurisdiction.

## V.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[164]  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[165]  For the reasons explained above, Petitioner has not made a substantial showing of a denial of a constitutional right and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Stephen Rowlette's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, as amended (Docs. 518, 532) is **denied** without evidentiary hearing; Petitioner's Motion for Sentencing Transcript at No Cost (Doc. 528) is **denied as moot**; Petitioner is also denied a certificate of appealability.

---

[163] *United States v. Def. No. 1: Real Prop. Known as 6544 Sni-A-Bar Road Kansas City, Mo.*, No. 16-1116-JWB, Docs. 1, 6, 19.  Trial is currently scheduled for June 14, 2021, on five of the vehicles listed in Petitioner's motion; the sixth has been dismissed from that lawsuit.

[164] 28 U.S.C. § 2253(c)(2).

[165] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

**IT IS FURTHER ORDERED** that Petitioner's Motion for Return of Property (Doc. 506) is **dismissed**.

**IT IS SO ORDERED.**

Dated: <u>May 3, 2021</u>

          S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE